**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **ACI WORLDWIDE CORP.,** | |
| **Plaintiff,** | **8:14CV31** |
| **vs.** | |
| **MASTERCARD TECHNOLOGIES, LLC, and MASTERCARD INTERNATIONAL, INC.,** | **MEMORANDUM AND ORDER** |
| **Defendants.** | |

This matter is before the Court on the Motion to Dismiss (Filing No. 59) submitted by Defendants MasterCard Technologies, LLC ("MasterCard Tech") and MasterCard International, Inc.'s ("MasterCard Int'l") (collectively "Defendants"). For the following reasons, the Defendants' Motion will be granted in part.

## FACTS

For purposes of the pending motion, the Plaintiff's well-pled facts are accepted as true, though the Court need not accept proposed conclusions of law. The following is a summary of the Plaintiff's factual allegations in the Amended Complaint (Filing No. 48).

Plaintiff ACI Worldwide Corp. ("ACI") alleges that Defendants disclosed confidential information regarding ACI's NET24-XPNET middleware ("XPNET") to Baldwin Hackett & Meeks, Incorporated ("BHMI"). ACI presents nine theories of recovery: breach of contract, misappropriation of trade secrets, fraud, breach of the duty of good faith and fair dealing, unjust enrichment, tortious interference with business relations and expectations, conversion, trespass to chattels, and civil conspiracy.

MasterCard Tech provides transaction processing, telecommunications, and related services to MasterCard Int'l for the benefit of the members and customers of MasterCard Int'l.   MasterCard Int'l provides payment processing services between merchant banks and purchasers' card-issuing banks for purchases using "MasterCard" brand debit or credit cards.   ACI provides and markets a broad, integrated suite of electronic payment software, and also powers electronic payments for hundreds of financial institutions, retailers, and processors around the world.   Starting in 1994 or earlier, ACI licensed to Defendants a variety of software, including XPNET.   Thereafter, Defendants disclosed ACI's proprietary intellectual property ("ACI's IP") to BHMI, and Defendants and BHMI replicated XPNET.

In mid-2010, MasterCard Int'l notified ACI that it would not renew its license for use of XPNET.   Less than three months later, Defendants publically announced their switch to BHMI's middleware product known as Concourse-Transaction Messaging System ("TMS").   In July 2011, ACI concluded that BHMI used ACI's IP to develop TMS.

## PROCEDURAL BACKGROUND

On August 26, 2014, ACI filed its Amended Complaint (Filing No. 48) with this Court.   Prior to filing this action, ACI initiated a proceeding in Nebraska state court against BHMI (the "Nebraska State Action") regarding BHMI's alleged use of confidential information to develop TMS.   (Def. Br. in Support of Mot. to Dismiss Am. Compl, Filing No. 60 at ECF 4 (citing *ACI Worldwide Corp. v. BHMI, Inc., et al.*, No. CI 12-9038 (District Court of Douglas County, Nebraska) (J. Russell Derr, District Court Judge)).)   The Nebraska State Action went to trial in August of 2014.   (*Id.*)   The jury rendered a verdict in ACI's favor on the misappropriation of trade secret claims.   (*Id.*)

Defendants then filed this motion to dismiss ACI's action in this Court due to ACI's failure to join a necessary party pursuant to Federal Rule of Civil Procedure 12(b)(7), and ACI's failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' 12(b)(6) motion applies to ACI's claims for fraud, breach of duty of good faith and fair dealing, unjust enrichment, tortious interference with business relations and expectations, conversion, trespass to chattels, and civil conspiracy.

## STANDARDS OF REVIEW

### I. Fed. R. Civ. P. 12(b)(7), Failure to Join a Party

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(7) for failure to join a party under Rule 19, the court must first determine whether the absent party is a "necessary party" under Rule 19(a). *Baker Grp., L.C. v. Burlington N. & Santa Fe Ry. Co.*, 451 F.3d 484, 490 (8th Cir. 2006) (citing Fed. R. Civ. P. 19(a)). If a party is necessary under Rule 19(a), that party must be joined if feasible. *See id.* If the court determines that an absent party is not necessary, then the case must go forward without that party, and there is no need to determine whether joinder is feasible under Rule 19(b). *Id.* at 491. Dismissal based on failure to join a party is only proper in cases where the absent party is necessary, joinder is not feasible, and the absent party is indispensable. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 108 (1968).

### II. Fed. R. Civ. P. 12(b)(6), Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A]lthough a complaint need

3

not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* at 630 (citing *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  "Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions."  *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010)) (internal quotation marks omitted).  "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice."  *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  The complaint's factual allegations must be "sufficient 'to raise a right to relief above the speculative level.'"  *Williams v. Hobbs*, 658 F.3d 842, 848 (8th Cir. 2011) (quoting *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009)).

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded

4

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests."  *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679 (citing *Twombly*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## DISCUSSION

### I.  Motion to Dismiss for Failure to Join BHMI

Under Federal Rule of Civil Procedure 19(a), a party is "necessary" if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  If the party is "necessary," subject to service of process, and joinder would not deprive the Court of subject matter jurisdiction, then "the court must order that the person be made a party."  Fed. R. Civ. P. 19(a)(1),(2).

### A. Fed. R. Civ. P. 19(a)(1)(A):  Complete Relief Among Existing Parties

While a decision by a court is not binding on nonparties, *see Parklane Hosiery Co., Inc., v. Shore*, 439 U.S. 322, 327 n. 7 ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."), Rule 19(a)(1)(A) asks whether "the court cannot accord complete relief *among the existing parties* . . . ."  Fed. R. Civ. P. 19(a)(1)(A) (emphasis supplied); *see also Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 484 (7th Cir. 2001) ("[T]he term 'complete relief' refers only to 'relief between the persons already parties, and not as between a party and the absent person whose joinder is sought.'") (quoting *Perrian v. O'Grady*, 958 F.2d 192, 196 (7th Cir. 1992)).

ACI's claims relate to Defendants' allegedly tortious conduct and to the contracts between ACI and MasterCard Int'l.  Defendants argue that the Court cannot grant complete relief to ACI *vis a vis* the Defendants in the absence of BHMI because, in the Amended Complaint, ACI asks the Court to award any "gains, profits and advantages" which Defendants conferred on others and to enjoin "all those acting in concert or participation with" Defendants from using TMS.  (Filing No. 60 at ECF (internal marks omitted).)  Defendants claim that granting such relief would impede

BHMI's ability to protect its interest in TMS and leave Defendants exposed to damages for which BHMI is responsible.

Without BHMI as a party, the Court can neither enjoin BHMI from marketing TMS nor order BHMI to disgorge its profits as a nonparty. However, the Court can grant complete relief to ACI *vis a vis* the Defendants with regard to ACI's tort and contract claims. The granting of complete relief for these claims will not require the Court to enjoin BHMI or order it to disgorge profits. Thus, under Rule 19(a)(1)(A), BHMI is not a necessary party for the resolution of the claims ACI has asserted against Defendants.

### B. Fed. R. Civ. P. 19(a)(1)(B): Nonparty Interests

Even if a court can grant complete relief in a nonparty's absence, a nonparty may still be deemed necessary if either Rule 19(a)(1)(B)(i) or (ii) is satisfied. Under Rule 19(a)(1)(B), if a party claims an interest in the litigation, it may be a necessary party if disposing of the action without the nonparty would impair the nonparty's ability to protect its interest or expose an existing party to a substantial risk of incurring multiple or inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)(B). In evaluating necessity under Rule 19(a)(1)(B), subsection (i) looks to the effect of non-joinder on the absent party while subsection (ii) examines its effect on those already parties to the action. *See id.*

### *1. BHMI's Interest in this Litigation*

BHMI does not appear to claim an interest in the subject matter of the present litigation. *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) ("It is the absent party that must claim an interest [in the subject matter of the litigation.]") (internal marks omitted); *see also Ohio Valley Envtl. Coal., Inc. v. Hobet Min., LLC*, 723 F. Supp. 2d 886, 915 (S.D.W. Va. 2010) ("An interest does not qualify under Rule 19(a)(1)(B)

unless claimed.  Nonetheless, the interest referred to in the Rule is not so narrow as to require the non-joined party attempt to intervene, or otherwise raise its interest in the case at bar.").  Defendants have not argued that BHMI has made any affirmative claim with regard to this action.  As such, Defendants have not met their burden as the moving party, showing that BHMI has made the requisite claim.

Neither does BHMI have a legally protected interest in this litigation, because ACI's claims go to the Defendants' alleged misconduct.[1]   ACI states that it "is not seeking money damages from BHMI, any injunctive relief against BHMI, or any other remedy against BHMI in this suit," and "BHMI has and will continue to defend its alleged rights in [TMS] in the State Court Action."  (Pl. Br. in Opp'n to Def.'s Mot. to Dismiss, Filing No. 70 at ECF 8.)

Even if BHMI could be shown to claim or possess an interest in this action, there does not appear to be any scenario in which BHMI would be impaired or impeded from protecting that interest.  As discussed above, the current litigation between Defendants and ACI cannot bind BHMI.  Furthermore, the risk that Defendants may be enjoined from using TMS does not prejudice BHMI, even if BHMI will subsequently pursue enforcement of its contract with Defendants.  *See MasterCard Int'l v. Visa Int'l Serv.*

---

[1] *See Faiveley Transport USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211 (S.D.N.Y. 2010) (finding that nonparty subsidiary was not a necessary party in action between nonparty's controlling corporation and defendant corporation which allegedly misrepresented itself as licensee of nonparty's intellectual property); *see also Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 619 (W.D. Pa. 2009) ("[Under Rule 19(a)(1)(B)], a party is only 'necessary' if it has a legally protected interest, and not merely a financial interest, in the action.") (internal citations and quotation marks omitted); *Davis Cos.*, 268 F.3d at 484 ("When a person is not a party to the contract in litigation and has no rights or obligations under that contract, even though the absent party may be obligated to abide by the result of the pending action by another contract that is not at issue, the absentee will not be regarded as an indispensable party in a suit to determine obligations under the disputed contract.") (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1613 (3d ed. 2001)).

*Ass'n*, 471 F.3d 377, 385 (2nd Cir. 2006) ("While there is no question that further litigation between [the nonparty] and [the defendant], and perhaps [the plaintiff] and [the defendant], is inevitable if [the plaintiff] prevails in this lawsuit, Rule 19(a)(1) is concerned only with those who are already parties.").

### 2. Existing Parties' Interests

ACI's claims turn on Defendants' contractual relationship with ACI. BHMI's absence should not subject Defendants to a substantial risk of inconsistent obligations. Rather, all questions as to Defendants' liability regarding their contract with ACI, and their related allegedly tortious conduct, can be adjudicated in the present action. *See Helzberg's Diamond Shops, Inc. v. Valley W. Des Moines Shopping Ctr., Inc.*, 564 F.2d 816, 819 (8th Cir. 1977) ("[A]ll of the rights and obligations arising under a lease can be adjudicated where all of the parties to the lease are before the court.").

In sum, BHMI is not a necessary party to this action under Rule 19(a)(1) because ACI's claims against Defendants are separate and distinct from its claims against BHMI, and Defendants have not proved that BHMI's interests, nor Defendants' own legally protected interests, will be impaired as a result of this lawsuit. Therefore, the Court will not dismiss ACI's Amended Complaint for failure to join a necessary party.

## II. Motion to Dismiss for Failure to State a Claim

### A.    ACI's Third Claim:  Fraud

Defendants argue that "ACI fails to state a claim for fraud because: (1) its fraud claims are purely conclusory; (2) it does not properly allege the elements of fraud; (3) its fraud allegations are not stated with the particularity required by Rule 9(b); and (4) it fails to state a plausible fraud claim."  (Filing No. 60 at ECF 14-15.)

9

In Nebraska, when asserting a claim for fraudulent misrepresentation, a plaintiff must allege the following:

> (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that the representation was made with the intention that the plaintiff should rely on it; (5) that the plaintiff did so rely on it; and (6) that the plaintiff suffered damage as a result.

*Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317, 331 (Neb. 2010). Pursuant to Federal Rule of Civil Procedure 9(b), Plaintiff must plead "'the circumstances constituting fraud . . . with particularity.' 'Circumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982).

### *1. Elements (1) and (2): Alleged Representation*

In the Amended Complaint, ACI alleges that Defendants' representatives promised in "various agreements" to "maintain the confidence of and would not copy, use, disclose, translate or otherwise reproduce or authorize any third party to copy, use, disclose, translate or otherwise reproduce, [ACI's IP], including licensed products, manuals, confidential information, derivative works and other proprietary intellectual property." (Filing No. 48 at ECF 35-36 ¶103.)

Defendants raise several issues with respect to the sufficiency of these allegations. With respect to the first element of fraudulent misrepresentation, Defendants argue that the alleged representations are not statements of fact and the phrase "various agreements" is not sufficiently particular. "To constitute fraud, a

misrepresentation must be an assertion of fact, not merely an expression of opinion." *Ed Miller & Sons, Inc. v. Earl*, 502 N.W.2d 444, 453 (Neb. 1993).  "Generally, fraud cannot be based on predictions or expressions of mere possibilities in reference to future events."  *NECO, Inc. v. Larry Price & Associates, Inc.*, 597 N.W.2d 602, 606 (Neb. 1999).  However, "fraud may be predicated on the representation that an event, which is in control of the maker, will or will not take place in the future, if the representation as to the future event is known to be false when made . . . and the other elements of fraud are present."  *Id.* at 606-07.

Although ACI does not specifically identify which agreements it refers to in its claim for relief based on fraudulent misrepresentation, ACI does allege that: on December 30, 2008, MasterCard Int'l and ACI entered into an agreement regarding Amendment 5 to the BASE24 License and Service Agreement No. B1522 (the "B1522 Agreement") (Filing No. 48 at ECF 10 ¶¶ 44, 45); pursuant to the B1522 Agreement, ACI licensed, among other things, XPNET (*Id.* at ECF 10 ¶ 44.); the XPNET License Agreement set forth various confidentiality and proprietary obligations to "insure that the licensed products and confidential information remained the confidential and proprietary property of [ACI] and not subject to publication, disclosure, replication or misappropriation," (*id.* at ECF 11 ¶46.); and that BHMI and Defendants began discussions regarding the development of TMS in 2008 and early 2009.  (*Id.* at ECF 20 ¶ 61.)[2]

---

[2] In its brief, ACI states that earlier in 2008, prior to December 30, Defendants had already begun disclosing ACI's proprietary information to BHMI.  Defendants point out that this assertion is not contained in the Amended Complaint.  While this assertion is not in the Amended Complaint, the Court concludes that this reasonable inference may be drawn from the facts pled.

ACI argues that these facts are sufficient to plead fraud because on December 30, 2008, when MasterCard Int'l entered into the agreement regarding Amendment 5 to the B1255 Agreement, MasterCard Int'l represented that an event in its control, *i.e.*, maintaining the confidentiality of ACI's IP, would take place in the future, and at the time it made that representation, it knew it was false because Defendants already violated the agreement.   Even if these facts are sufficient to plead misrepresentation with particularity, ACI failed to allege that it detrimentally relied on Defendants' alleged misrepresentation.

### *2.  Elements (3), (4), and (5):  Detrimental Reliance*

"[P]arties who allege fraud must plead detrimental reliance with particularity— including 'how the defendant intended plaintiffs to act in reliance on each of the alleged misrepresentations, the nature of plaintiffs' justifiable reliance on each misrepresentation, and the damage resulting from such reliance.'"   *Stumm v. BAC Home Loans Servicing, LP*, 914 F. Supp. 2d 1009, 1013 (D. Minn. 2012) (quoting *Allison v. Security Ben. Life Ins. Co.,* 980 F.2d 1213, 1216 (8th Cir.1992) (internal marks omitted).

With regard to elements (3), (4), and (5), the Court concludes that ACI did no more than include threadbare recitals of these elements supported by mere conclusory statements.   The Amended Complaint is deficient because ACI failed to plead, much less plead with particularity, how it relied to its detriment on the representations made by Defendants in December of 2008 and thereafter.   While ACI discussed its damages resulting from Defendants' alleged disclosure of ACI's proprietary information, it failed to

plead facts connecting Defendants' misrepresentations, ACI's reliance, and ACI's damages.

The only alleged misrepresentations are reaffirmations of contracts made in and after 2008. ACI has not alleged that it provided Defendants with any trade secrets that are the subject of this litigation after MasterCard Int'l reaffirmed its contract in 2008, nor has ACI provided the Court with any facts supporting an inference that ACI would not have suffered its alleged damages had it not relied on Defendants' promises in the 2008 agreement and thereafter. In contrast, the facts alleged in the Amended Complaint support a reasonable inference that Defendants had access to ACI's IP long before the December 30, 2008 representation.[3] ACI also has not alleged any facts supporting an inference that Defendants made any promise knowing that promise was false, prior to December 30, 2008. ACI failed to plead detrimental reliance on Defendants' alleged misrepresentations, and its claim for fraud will be dismissed.

### B.   ACI's Fourth Claim: Breach of Duty of Good Faith and Fair Dealing

Defendants contend that ACI failed to plead facts supporting a claim for breach of duty of good faith and fair dealing and ACI's claim contains no more than threadbare recitals of the law.

"The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of

---

[3] ACI alleged that, in 1980, it licensed ACINET, a predecessor of XPNET, to the National Bank of Detroit ("NBD") to use with its Cirrus Debit Switch application. (Filing No. 48 at ECF 1 ¶2.) In 1999, NBD Bank sold the Cirrus Debit Switch application to MasterCard Int'l and the switch was renamed the MasterCard Debit Switch application (the "MDS"). (*Id.*) Defendants have had access to ACI's IP since at least 1994. (*Id.* at ECF 2 ¶3.) MasterCard Int'l had a long-standing license for ACI's XPNET software. (*Id.*)

another party to receive the benefit of the contract." *Cimino v. FirsTier Bank, N.A.*, 530 N.W.2d 606, 616 (Neb. 1995). "The nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties." *RSUI Indem. Co. v. Bacon*, 810 N.W.2d 666, 674 (Neb. 2011). "A violation of the covenant of good faith and fair dealing occurs only when a party violates, nullifies, or significantly impairs any benefit of the contract. The question of a party's good faith in the performance of a contract is a question of fact." *Id.*

Here, ACI alleged that it entered into various contracts with Defendants. ACI also alleged that Defendants disclosed confidential information to BHMI so BHMI could create replica software, TMS, performing the function of XPNET. ACI also alleged that Defendants publicly announced use of TMS. These facts, among others alleged in the Amended Complaint, are sufficient to raise a right to relief for breach of a duty of good faith and fair dealing above the speculative level because they support reasonable inferences that ACI had a justifiable expectation that Defendants would refrain from using ACI's IP to create a replica software, and Defendants violated ACI's expectation, allowing Defendants, and potentially others, to terminate contracts with ACI. Accordingly, the Court will not dismiss this claim.

### C.   ACI's Fifth Claim:  Unjust Enrichment

Defendants argue that ACI's unjust enrichment claim should be dismissed because "ACI alleges the existence of enforceable contracts between ACI and MasterCard . . . ." (Filing No. 60 at ECF 18.) To recover on a claim for unjust enrichment, a plaintiff must show that (1) the defendant received a benefit, (2) the defendant retained possession of the benefit, and (3) the defendant in justice and

14

fairness ought to pay the plaintiff for the benefit.  *See Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 302 (Neb. 2006).  Here, ACI has alleged that Defendants received benefits from using ACI's IP improperly.   Defendants argue that ACI's claim for unjust enrichment should be dismissed because ACI also alleged the existence of a contractual relationship between ACI and Defendants which ACI alleges governs Defendants' use of ACI's IP.

"[T]he Nebraska Supreme Court has repeatedly held that a plaintiff is permitted to plead both express contract and quasi-contract in the same petition."  *Byrne v. Hauptman, O'Brien, Wolf & Lathrop, P.C.*, 608 N.W.2d 208, 213 (Neb. 2000).  A motion to dismiss ACI's unjust enrichment claim on the grounds that ACI has also alleged a contractual relationship is premature and the Court will not dismiss ACI's claim on these grounds.

### D.    ACI's Sixth Claim:  Tortious Interference

Under Nebraska law, to plead a cause of action for tortious interference with a business relationship or expectancy a plaintiff must plead the following:

> (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

*Macke v. Pierce*, 661 N.W.2d 313, 317 (Neb. 2003) (internal citations and quotations omitted).

ACI alleged that it has averaged two hundred and fifty (250) XPNET customers per year.  (Filing No. 48 at ECF 25 ¶74).  ACI also alleged that Defendants replicated XPNET, creating TMS with BHMI, and Defendants publically announced the transition

15

from XPNET to TMS.  ACI argues that the introduction of TMS into the marketplace has interfered with ACI's business relationships.  Defendants argue that ACI has failed to identify any lost business resulting from Defendants' alleged conduct.   The Amended Complaint does not allege that ACI lost any customers, other than Defendants, nor has ACI alleged facts showing harm caused by Defendants' interference with ACI's relationships in some other way as a result of Defendants' alleged wrongdoing.  Thus, ACI failed to plead facts supporting elements four and five, and this claim will be dismissed.

### E.    ACI's Seventh Claim:  Conversion

Defendants argue that ACI failed to plead conversion because ACI did not allege that it was deprived of the use or possession of its IP.

Under Nebraska law, "[c]onversion is any unauthorized or wrongful act of dominion exerted over another's personal property which deprives the owner of his property permanently or for an indefinite period of time."  *Roth v. Farmers Mut. Ins. Co. of Nebraska*, 371 N.W.2d 289, 291 (Neb. 1985).   Nebraska Courts also define conversion as "any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights."  *Spear T Ranch, Inc. v. Knaub*, 691 N.W.2d 116, 126-27 (Neb. 2005).  "[T]he essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property."  *Zimmerman v. FirsTier Bank, N.A.*, 585 N.W.2d 445, 452 (Neb. 1998) (quoting *Terra Western Corp. v. Berry and Co.*, 295 N.W.2d 693, 696 (Neb. 1980)).

ACI has not alleged that it was deprived of the use of its IP in any form nor has ACI alleged that Defendants had access to some form of ACI's IP that ACI did not

16

simultaneously have access to.  Instead of addressing its failure to allege such facts, ACI responds to Defendants' argument by insisting that intangible property is subject to conversion under Nebraska law.  The Court recognizes that Nebraska law provides for conversion actions with respect to intangible property under some circumstances. Nonetheless, ACI's claim for conversion is still flawed and will be dismissed because ACI failed to allege that it was *deprived* of its property in any form.

Moreover, the case on which ACI relies to support its claim that intangible property is subject to conversion and therefore ACI's claim should not be dismissed— *Mundy v. Decker*, No. A-97-882, 1999 WL 14479 (Neb. Ct. App. Jan. 5, 1999)—is distinguishable.  In *Mundy*, an employer's former employee deleted stored files from her work-computer's hard drive.  *Id.* at *1.  As a result, the employer was deprived of access to a computer directory that "save[d] time and effort by enabling retrieval of . . . stored documents for fast and easy revisions."  *Id.*  While some of the deleted files were available in other forms, handwritten hard-copies and floppy disks, the court recognized a distinction between the copies of the files in other forms and the files stored on the former employee's hard drive.  *Id.* at *5.  Prior to deletion, the deleted documents could be accessed by a computer directory.  *Id.*  The directory allowed an employee to "avoid completely retyping text in similar or repetitive situations, and [the] directory serve[d] as a storage and reference mechanism. [The] directory also store[d] works in progress which [could] later be completed or revised."  *Id.* at *1.  As a result of the former employee's acts, the directory no longer existed."  *Id.*

Unlike the employer in *Mundy*, ACI has not demonstrated that it no longer has access to its intangible property in some form because of Defendants' alleged

17

wrongdoing. In *Mundy,* the former employee's deletion of files clearly involved a deprivation of property, while Defendants' use of ACI's IP does not. ACI's claim for conversion is not deficient because ACI pleaded conversion of intangible property. Rather, ACI's claim is wanting because it fails to allege Defendants' "act of depriving [ACI] wrongfully [its] property," that is, "the essence" of a claim for conversion. *See Zimmerman*, 585 N.W.2d at 452. Accordingly, ACI's claim for conversion will be dismissed.

### F.    ACI's Eighth Claim:  Trespass to Chattels

Defendants argues that ACI's trespass to chattels claim should be dismissed because ACI failed to allege a plausible claim that it was dispossessed or otherwise deprived of the use of certain characteristics of XPNET or that XPNET itself was impaired.

The Restatement (Second) of Torts identifies the following elements of a trespass to chattel claim:

> One who commits a trespass to chattel is subject to liability to the possessor of the chattel if, but only if,
>
> (a) he dispossesses the other of the chattel, or
>
> (b) the chattel is impaired as to its condition, quality, or value, or
>
> (c) the possessor is deprived of the use of the chattel for a substantial time, or
>
> (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest.

18

Restatement (Second) Torts § 218 (1965).[4]  In *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 621 (E.D. Va. 2005), the court considered the plaintiff's trespass to chattels claim based on the defendant's alleged unauthorized download of plaintiff's software.   Applying the language in Restatement (Second) Torts § 218, the court dismissed plaintiff's trespass to chattels claim for failure to allege that plaintiff's software was impaired.   *Id.*   Here, the Court concludes that dismissal of ACI's trespass to chattels claim is appropriate because, as stated above, ACI did not allege that Defendants deprived it of access to XPNET nor did ACI allege that XPNET itself was impaired.

### G.    ACI's Ninth Claim:  Civil Conspiracy

Defendants argue that ACI's civil conspiracy claim should be dismissed because MasterCard Tech and MasterCard Int'l, subsidiaries of the same parent, cannot conspire.

Under Nebraska law, "[a] civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means."  *Eicher v. Mid Am. Fin. Inv. Corp.*, 748 N.W.2d 1, 15 (Neb. 2008).  "A corporation acts through its agent and the acts of the agent are the acts of the corporation." *Dixon v. Reconciliation, Inc.*, 291 N.W.2d 230, 234 (Neb. 1980) (internal citations and quotations omitted).   As a general rule, "a corporation cannot conspire with itself."  *Id.*  Thus, if all acts relevant to this action by MasterCard Tech and MasterCard Int'l are acts as agents to their shared parent, then MasterCard

---

[4] The parties have not identified any cases discussing claims for trespass to chattels under Nebraska law, nor has the Court found any such cases.

Tech and MasterCard Int'l cannot conspire.   However,   "[w]hether an agency relationship exists depends on the facts underlying the relationship of the parties . . . ." *State of Nebraska ex rel. Medlin v. Little*, 703 N.W.2d 593, 597 (Neb. 2005).   A parent-subsidiary relationship existing between two corporations does not as a matter of law create an agency relationship.   *See, e.g,. Stoehr v. American Honda Motor Co., Inc.*, 429 F. Supp. 763, 766 (D. Neb. 1977) ("A parent-subsidiary relationship by itself is not sufficient to justify service [on one corporation as an agent of another corporation pursuant to Fed. R.Civ.P. 4(d)(3)].");   *see also* Restatement (Third) Of Agency § 1.01, Reporter's Notes e.(2) (2006) (listing cases that stand for the proposition that "a parent-subsidiary relationship does not in itself create a relationship of agency").

While MasterCard Tech and MasterCard Int'l as subsidiaries of the same parent corporation may also be agents of the same parent corporation, they are not agents of their parent corporation as a matter of law.   If the acts of MasterCard Tech and MasterCard Int'l are not the acts of the same parent corporation, then it is plausible that the two might conspire.   ACI alleged that MasterCard Tech and MasterCard Int'l developed and carried out a scheme to disclose ACI's IP to BHMI.   Whether MasterCard Tech and MasterCard Int'l were acting as agents of the same parent is a question of fact, not properly decided on this motion to dismiss.   The Amended Complaint does not identify the capacity in which MasterCard Tech and MasterCard Int'l acted, that is, ACI has not stated whether Defendants acted as agents of the same parent corporation.   Giving ACI the benefit of every inference which may reasonably be drawn from the allegations in the Amended Complaint, the Court concludes that ACI's allegations are sufficient to plead civil conspiracy.

**CONCLUSION**

The Court concludes that BHMI is not a necessary party to this action, and Defendants' motion to dismiss based on ACI's failure to join BHMI will be denied.  For the reasons stated above, ACI's claims for fraud, tortious interference, conversion, and trespass to chattels will be dismissed, with leave to amend.  Defendants' motion is otherwise denied.  Accordingly,

IT IS ORDERED:

1.  Defendants' Motion to Dismiss (Filing No. 59) is granted in part, as follows: ACI's claims for fraud, tortious interference, conversion, and trespass to chattels are dismissed, with leave to amend;

2.  Defendants' Motion is otherwise denied;

3.  ACI is granted leave to file a second amended complaint on or before January 20, 2015; and

4.  Defendants will respond to any second amended complaint, or to the surviving claims in the Amended Complaint (Filing No. 48) if no second amended complaint is filed, on or before February 6, 2015.

Dated this 31st day of December, 2014.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge