## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ACI WORLDWIDE CORP., | ) | |
| | ) | |
| **Plaintiff,** | ) | **8:14CV31** |
| | ) | |
| **V.** | ) | |
| | ) | |
| MASTERCARD TECHNOLOGIES, | ) | **ORDER** |
| LLC, and MASTERCARD | ) | |
| INTERNATIONAL, Incorporated, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

This matter is before the Court on Plaintiff's Motion to Compel Production of Documents (filing 155). For the reasons explained below, Plaintiff's Motion will be denied, without prejudice to reassertion.

## BACKGROUND

In this action, Plaintiff alleges that Defendants, in violation of a licensing agreement and other legal obligations between the parties, disclosed confidential information regarding Plaintiff's NET24-XPNET middleware to Baldwin Hackett & Meeks, Incorporated ("BHMI"). Plaintiff claims that the disclosure of this proprietary intellectual property, including Plaintiff's software, manuals, and/or derivative works, allowed Defendants and BHMI to replicate Plaintiff's NET24-XPNET middleware and create a replacement middleware product.

Over the course of this suit, numerous discovery disputes have arisen. The most recent deals with Plaintiff's discovery requests seeking documents, files and electronically stored information ("ESI"), constituting or containing Plaintiff's proprietary information that was (1) inputted into Defendants' MasterCard Debit Switch ("MDS"); (2) never removed from the MDS application following the termination of the license agreements between Plaintiff and Defendants; and (3) copied from the MDS for transmission to BHMI. Plaintiff

believes that this information will show whether Defendants continued to use the XPNET information in their MDS after the expiration of the license agreement between the parties, and whether Defendants still use the XPNET information in their MDS source code.

Defendants object to the production of this information, largely due to the alleged burdensomeness of the requests and the claimed risks the requests pose to Defendants' production systems.  Plaintiff, in an effort to address Defendants' concerns, has revised the subject discovery requests on several occasions.  Most recently, Plaintiff devised a search protocol for Defendants' use in retrieving the requested information.  At this time, Plaintiff seeks an order compelling Defendants to implement the search protocol.

**DISCUSSION**

Under the federal rules, parties to a lawsuit may obtain discovery regarding any matter, not privileged, that is relevant to a claim or defense of any party.  Fed. R. Civ. P. 26(b)(1).  Relevancy is broadly construed and "[d]iscovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear the information sought can have no possible bearing on the subject matter of the action."  *Met-Pro Corp. v. Industrial Air Technology, Corp.*, No. 8:07CV262, 2009 WL 553017, * 3 (D. Neb. March 4, 2009).  The party seeking discovery must make a threshold showing that the requested information is relevant to claims or defenses.  *Id*.

Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden."  *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991).  Therefore, the party opposing the motion to compel has the "burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper."  *Whittington v. Legent Clearing, LLC*, No. 8:10CV465, 2011 WL 6122566 , * 3 (D. Neb. Dec. 8, 2011).

2

The Federal Rules of Civil Procedure also authorize courts to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). With respect to electronic discovery, the Federal Rules state:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B).

Plaintiff's discovery requests seek any documents, files and electronically stored information constituting or containing Plaintiff's proprietary information that was (1) inputted into Defendant's MDS application, (2) never removed from the MDS application following the termination of the license agreements between Plaintiff and Defendants, and (3) copied from the MDS for transmission to BHMI. Generally, Defendants do not dispute the relevance of the requested information. Rather, Defendants maintain that requiring them to run a software program on their production systems in an effort to retrieve the requested information would be unduly burdensome and invasive.

Having reviewed the matter, the Court finds that Plaintiff has shown a particular need for the information and that the information is relevant to the issues involved in this action. However, the Court simply does not have the expertise necessary to determine the best methodology to be employed in retrieving the requested materials in a safe, non-obtrusive, and cost-effective manner. Based on the information before it, the Court does not even know whether a search methodology or protocol exists (or could exist) which would allow the requested information to reasonably be retrieved.

The parties have been unable to find a solution to this discovery dilemma, much to the

3

detriment of all involved. "The Federal Rules of Civil Procedure . . . emphasize that electronic discovery should be a party-driven process." *Aquilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec.*, 255 F.R.D. 350, 358 (S.D.N.Y. 2008). "[C]ooperation between counsel regarding the production of electronically stored information allows the parties to save money, maintain greater control over the dispersal of information, maintain goodwill with courts, and generally get to the litigation's merits at the earliest practicable time." *Saliga v. Chemtura Corp.*, No. 3:12CV832, 2013 WL 6182227, *1 (D. Conn. Nov. 25, 2013) (quotations omitted). *See also William A. Gross Construction Associates, Inc. v. American Manufacturers Mutual Insurance Company*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI").

Consequently, the Court will order the parties to once again confer in an effort to reach an agreement regarding the search methodology to be employed in retrieving the requested information. In the event the parties cannot come to an agreement, the Court will immediately refer the matter to a special master who will oversee the production of ESI in this case. The parties are advised that costs of retaining the special master will be assessed against the parties in proportion to their success (or lack thereof) on the merits of their arguments regarding a reasonable search methodology (if any) that can be used to retrieve ESI in this case.

Accordingly,

**IT IS ORDERED** as follows:

1.   Plaintiff's Motion to Compel Production of Documents (filing 155) is denied without prejudice to reassertion at a later time.

2.   The parties shall meet and confer in an effort to devise a search protocol or methodology to employ for retrieving the information requested by Plaintiff. The parties shall submit a joint status report to the Court no later than July 20, 2015, advising the Court as to the outcome of this meet and confer conference. If the parties are unable to reach an agreement regarding search methodology,

said report shall contain a list of individuals who the parties deem acceptable to serve as special master.  The Court advises the parties that the special master will not necessarily be selected from the list of names provided.

3.      Plaintiff's Motion to File Sur-Reply Brief in Support of Motion to Compel (filing 174) is granted, and the brief has been considered by the Court in ruling on this Motion to Compel.

**DATED July 13, 2015.**

                                        **BY THE COURT:**

                                        **S/ F.A. Gossett**
                                        **United States Magistrate Judge**